IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:21-CV-338-M

KIMBERLY ERWAY, *as Parent of Minor Child Jamii Erway*,

    Plaintiff,

v.

UNITED STATES TRANSPORTATION SECURITY ADMINISTRATION, UNITED STATES OF AMERICA, and JANE DOE, *an Employee of the United States Transportation Security Administration*,

    Defendants.

OPPOSITION TO GOVERNMENT DEFENDANTS' MOTION TO DISMISS

## I.   Statement of the Case

Plaintiff Dr. Kimberly Erway, on behalf of her minor child, Jamii, filed a complaint alleging that Jamii was, *inter alia*, ordered to undergo an unlawful strip search at an airport by an employee of the TSA. ECF No. #1. Her complaint alleges that Defendants, the federal government and the employee who ordered the unlawful strip search, violated her Fourth Amendment rights and intentionally inflicted emotional distress, and should be enjoined from continuing to do the same[1].

---

[1] Defendants note that this is Erway's "second action" under these facts, and that the "prior suit was dismissed for lack of subject matter jurisdiction and failure to state a claim." Mot. to Dismiss, p. 1. More specifically, the prior action was dismissed because the Court found Plaintiffs provided ineffective notice under the Federal Tort Claims Act, and because the claim for injunctive relief failed to spell out that it was a cause of action under the Fourth Amendment. *See Erway v. TSA* et al., 5:20-CV-141 (E.D.N.C., Oct. 29th, 2020, ECF No. 17). These defects have been cured. *See* Complaint, ECF No. 1, ¶¶ 50-53 and "Count 3" (pp. 9, 10).

The federal government defendants, Transportation Security Administration and United States of America, filed a motion to dismiss under Fed. R. Civ. P. 12(b) on November 1st, 2021. *See* Mot. to Dismiss, ECF No. 9. The motion alleges lack of subject-matter jurisdiction due to sovereign immunity under subsection (1) and failure to state a claim under subsection (6) of Rule 12(b). *Id*. In particular, they allege that TSA screeners are not liable under the FTCA for the intentional infliction of emotional distress as alleged here, and that the claim for injunctive relief should be dismissed for lack of standing, subject-matter jurisdiction, and failure to state a claim.

For the following reasons, the motion is without merit and should be denied.

### II.     Statement of the Facts

On May 1st, 2019, Plaintiff Dr. Kimberly Erway and her teenage daughter Jamii arrived at Raleigh-Durham International Airport and presented themselves at a TSA security checkpoint. Complaint, ¶ 15. Jamii is transgender, meaning, in her case, that she was born male and now identifies as female. *Id*., ¶ 24. Because TSA body scanners require the operator of the body scanner to input the correct sex of the traveler in order to avoid generating false alarms, transgender people are frequently subject to false alarms. *Id*., ¶ 28. This should not be a serious issue, as false alarms are resolved by a simple pat-down search conducted at the checkpoint. *Id*., ¶ 34. However, after generating a false positive on Jamii, for reasons still unknown to the Plaintiff, Defendant Jane Doe, a TSA employee, insisted that instead of the normal pat-down, Jamii would be required to strip and allow her to touch the child's bare genitals. *Id*., ¶ 36. Doe then also advised Jamii that she was not free to leave, effecting an arrest, even though it is not a crime to refuse a search by TSA, and even though Doe had no lawful authority to make an arrest anyway. *Id*., ¶¶ 38, 39. Jamii, though eventually permitted to leave, suffered severe emotional distress as a result.

### III.  Standard of Review

Defendants adequately describe the standard of review for this motion.  Mot. to Dismiss, pp. 7, 8.

### IV.  Argument

*A.  The IIED Claim Does Not Arise from False Imprisonment*

The Government alleges that the intentional infliction of emotional distress claim brought by Plaintiff arises out of false imprisonment.  Mot. to Dismiss, pp. 15, 16.  The basis for IIED was not that the screener held Plaintiff for a short period of time; rather, it was that TSA told a child that they will need to strip and allow for the probing of their genitals.  Complaint, ¶¶ 70 – 76.  In other words, it was not the loss of liberty that was emotionally-damaging, but rather something separate and in addition to any loss of liberty.  Cf. *United States v. Shearer*, 473 U.S. 52, 55 (1985) (attempt to cast a battery as negligence fails because "the battery was the immediate cause of Private Shearer's death and, consequently, the basis of respondent's claim."). A thorough review of tort law shows no jurisdiction makes "threatening a strip search" an element of false arrest; likewise, one need not falsely arrest someone in order to tell them to take off their clothes and inflict emotional damage.  In fact, the strip search threat, and start of emotional damages, in this case came *before* the false arrest, rather than "incident to" the arrest or post-arrest.  Complaint, ¶¶ 36 – 39.  IIED therefore did not "arise" from false imprisonment.

B. *TSA Screeners Are "Investigative or Law Enforcement Officers" Under the FTCA*

The Federal Tort Claims Act waives sovereign immunity and allows the government to be sued for the state-law torts of its employees with certain caveats. One of those caveats is that for certain intentional torts (including, as relevant here, false arrest, should the Court find that the IIED claim arises out of the same), the government only waives sovereign immunity if the tortfeasor is an "investigative or law enforcement officer." 28 U.S.C § 2680(h).

There are two circuits in which there is binding precedent on whether TSA screeners are "investigative or law enforcement officers," and both of them held that they *are*. *Pellegrino v. United States*, 937 F.3d 164 (3rd Cir. 2019) (*en banc*); *Iverson v. United States*, 973 F.3d 843, 854 (8th Cir. 2020). The only Court of Appeals to ever hold otherwise did so in an unpublished, non-binding (even within that circuit) opinion[2], in response to a *pro se* litigant. *Corbett v. TSA*, 568 F. App'x 690, 700–02 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1559 (2015).

The Government starts its uphill battle against the well-reasoned and on-point decisions of the *en banc Pellegrino* court and the *Iverson* court by pointing out that TSA screeners are not law enforcement officers. Mot. to Dismiss, p. 4. No one in this case or any other of which the undersigned counsel is aware has ever suggested otherwise. Rather, it is the "investigative or" part of "investigative or law enforcement officer" that applies here, and it is that part which TSA hopes the Court ignores in arguing that only law enforcement officers are covered. In other words, the Government's argument rests on the Court ruling that "investigative or" is mere surplusage. But, it is the Court's "duty to give effect, if possible, to every clause and word of a statute." *United*

---

[2] *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

*States v. Menasche*, 348 U.S. 528, 538-39 (1955) (*internal citation and quotations omitted*) (discussing canon against surplusage).



*Image 1 – Photo of uniform & badge of TSA screeners reading "US Officer."*

It is obviously "possible" to give "investigative or" meaning here, and Congress did not leave the Court in the dark as to what they intended: the statute continues on to define "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law[3]." § 2680(h). The effect of "investigative or" is therefore to include individuals who may not be "law

---

[3] The *Corbett* court did not even reach the latter half of this sentence, because it inexplicably concluded that TSA screeners are not "officers of the United States." TSA screeners literally wear a badge that says "US Officer." <u>See</u> Image 1 (*supra*). No other court, at any level or in any jurisdiction, of which the undersigned counsel is aware has adopted the reasoning of the Eleventh Circuit's unpublished opinion.

- 5 -

Case 5:21-cv-00338-M   Document 13   Filed 11/22/21   Page 5 of 15

enforcement officers" but are for some other reason "empowered by law" to do one or more of the following: "execute searches," "seize evidence," or "make arrests for violations of Federal law."

TSOs are empowered — indeed, required — by law to execute searches of all travelers who seek to board passenger aircraft, see 49 U.S.C. § 44901(a), and every American understands that TSA screeners are hired to do one primary task: to search people on their way into the airport. So, the Government must explain how even though TSA screeners "execute searches," they still do not fall under Congress' definition of "investigative or law enforcement officers." The Government attempts to do so by saying that administrative searches don't count; rather, only law enforcement searches count. Mot. to Dismiss, p. 12. But, the text of the law does not explicitly limit "searches" to "law enforcement searches," and so this reading asks the Court to apply a meaning other than the ordinary one to the word "searches," as if words were added to the statute. This is prohibited unless the text suggests that a different or technical meaning should apply. *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). Further, this interpretation would bring us back to making the words "investigative or" surplusage. That is, "law enforcement searches," we are left to presume, can only be conducted by "law enforcement officers," and therefore the words "investigative or" would add nothing to the equation.

The Government argues that several clues in the statute, plus legislative history, should be sufficient to prompt the Court to ignore the canon against surplusage and the ordinary-meaning canon, and insert words into the statute to limit "searches" to law enforcement searches only. We explore them in detail:

i. *The Word "Execute"*

The Government offers that when Congress speaks of "executing" searches, it speaks of "executing search warrants," which means Congress was only talking about criminal law enforcement searches. Mot. to Dismiss, pp. 11. But, this argument does not hold up to scrutiny. The word "execute" in this context just means to "carry out or put into effect." *Execute*, Oxford Dictionaries [Online], https://www.lexico.com/en/definition/execute. TSA points out that "Congress used the term 'execute' rather than more general language such as 'conduct' or 'carry out,'" Mot. to Dismiss, p. 11, but that's literally what "execute" means. The word's natural usage is not limited to search warrants, and TSA screeners plainly "carry out or put into effect" TSA search procedures.

Cases are in accord. "[S]ection 2680(h) does not require [the officer] to have had authority to seek and execute search *warrants*; it speaks only of executing searches" *Bunch v. United States*, 880 F.3d 938, 945 (7th Cir. 2018) (*emphasis in original*). And "TSO screenings are 'searches' (i) as a matter of ordinary meaning, (ii) under the Fourth Amendment, and (iii) under the definition provided in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Attempts to distinguish (iv) between administrative and criminal 'searches' are divorced from the plain text, and any distinction, if one must be made, should account for (v) the fact that TSA searches extend to the general public and involve examinations of an individual's physical person and her property." *Pellegrino* at 172. Just as TSA cannot escape the fact that it conducts "searches" by using euphemisms like "screening," a search does not become "not a search" because they say they "perform" or "conduct" it rather than "execute" it.

### ii. The Other Two Criteria

The Government next argues that because "seize evidence" and "make arrests" are law enforcement powers, "execute searches" must be read in that context too, effectively invoking the interpretive canon *noscitur a sociis* (to know something by its accompanying words). Mot. to Dismiss, p. 12. This fails to have the effect the Government desires for two reasons.

First, "the three duties in the proviso are listed in the disjunctive ('to execute searches, to seize evidence, or to make arrests'). When Congress has separated terms with the conjunction 'or,' the canon often is of little help." *Pellegrino* at 174 (*internal citations and quotations omitted*). The reason for this is clear: when writing a list that uses the word "or," one is making a list of items that are *different* from each other. In this context, it does not make sense to assume that different items are all in the same context.

Second, these powers are apparently not actually exclusive to law enforcement, as TSA screeners *also seize evidence*. If a TSA x-ray operator discovers narcotics, child pornography, or an unregistered machine gun, is their policy to hand the item back to the traveler? Of course not: immediately on discovery they seize the items and summon law enforcement. *United States. v. McCarty*, 648 F.3d 820, 825, fn. 3 (9th Cir. 2011) ("screeners are required under the TSA policy to notify a law enforcement officer and turn the item over for further action if they simply 'feel it possibly could be contraband.'"); <u>see also</u> Mot. to Dismiss, Attachment 2, ¶ 10 ("If a TSA screener at RDU discovers an item that appears to be illegal … the screener must call the RDU police department"). Despite the fact that they turn the evidence over to law enforcement officers rather

than personally make an arrest and check the item into their own evidence storage rooms, these evidence seizures, however brief, are indeed for the purpose of federal criminal law enforcement[4].

### iii. "For Violations of Federal Law"

TSA argues that the "for violations of Federal law" clause in § 2680(h) should indicate to the Court that TSA screeners are not covered. Mot. to Dismiss, p. 13. This argument borders of frivolous: TSA was created by federal law and its screeners conduct searches pursuant to the mandates of federal law. Mot. to Dismiss, p. 3 (TSA created by Congress with ATSA).

In order for TSA's argument to make any sense whatsoever, first, they must persuade the Court that in the text of the law ("…any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.") the "for violations of Federal law" clause applies not just to "make arrests" but to each of "execute searches," "seize evidence," and "make arrests." In *dicta*, the *Pellegrino* court disagreed: "Applying [the 'rule of the last antecedent'] here, the phrase 'for violations of Federal law' would modify only the last antecedent, 'make arrests,' not 'execute searches.'" *Pellegrino* at 177.

This sentence was *dicta* because the *Pellegrino* court found it unnecessary to decide the issue since TSA screeners so obviously operate pursuant to federal law. They had no trouble

---

[4] It is even arguable that TSA screeners *also* have some limited power of arrest. In *George v. Rehiel*, 738 F.3d 562, 577 (3rd Cir. 2013), the Court ruled that TSA screeners "had a justifiable suspicion that permitted further investigation" of the plaintiff, and TSA could hold the passenger "as long as the brief detention required to conduct that investigation was reasonable." See also *Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690 (11th Cir. 2014) (brief seizure allowed until TSA screeners "satisfy themselves that [passenger] did not pose a security threat"). Given that TSA has ample search authority, at least some right to seize evidence, and possibly some right to seize people, even though they are not law enforcement officers, they squarely fit within the "investigative or" category.

rejecting TSA's argument, re-presented here in Mot. to Dismiss, p. 13, that "for violations of Federal law" should really mean "for violations of Federal *criminal* law." *Id*. at 177 ("To be sure, Congress could have said that an officer could 'seize evidence' or 'make arrests' only 'for violations of Federal [criminal] law.' But it didn't."). They also had no trouble concluding that TSA searches do include searches for violations of federal criminal law, pointing to 49 U.S.C. § 46505 (providing criminal penalties for "[c]arrying a weapon or explosive on an aircraft"). *Id*. Just because TSA searches are not aimed at finding *general* federal criminal law violations – that is, they are supposed to be aimed only at finding items *relevant to aviation security* – does not mean that they are not authorized to search for certain specific federal criminal law violations, like the federal crime of carrying a gun on an airplane. In other words, even if authority to search for violations of federal criminal law were required to fall under § 2680's ambit, TSA would not need to be authorized to search for *every* violation of federal criminal law; authorization to search for a few specific criminal laws, such as the criminal prohibition on taking guns on planes, would do the job.

### iv. *Torts Typically Committed by Law Enforcement*

TSA's final purported clue is that the intentional torts covered by § 2680(h) are "the types of torts typically committed by individuals with traditional police powers." Mot to Dismiss, p. 14. "To be sure, these torts are commonly claimed against criminal law enforcement officers performing criminal law functions. But as our case demonstrates, that these torts are typically brought against criminal law enforcement officers does not mean that they are exclusively brought against them." *Pellegrino* at 175. It should come as no surprise, given TSA's direct authority to place their hands on the bodies of travelers routinely, that the TSA checkpoint might be a spot likely to generate battery, false arrest, and other intentional tort liability.

> v. *Legislative History & "Narrow vs. Broad" Construction of Waivers of Sovereign Immunity*

The Government invites the Court to look beyond the text of the statute to legislative history. Mot. to Dismiss, pp. 14, 15. When a statute is clear on its face, "judicial inquiry is complete" and no recourse to legislative history may be had to re-write the statute. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). Because the Government's argument requires either the insertion or deletion of words into or from the text of the statute, it is not "ambiguous" and the Court should not try to re-write the statute with what TSA says Congress "meant to say." <u>See</u> <u>also</u> *Pellegrino* at 179, 180 (rejecting recourse to legislative history); *Millbrook v. United States*, 569 U.S. 50, 55 (2013) (admonishing, in regards to §2680(h), "[a] number of lower courts [which] have nevertheless read into the text additional limitations designed to narrow the scope of the law enforcement proviso."). "Had Congress intended to further narrow the scope of the proviso, Congress could have…" *Millbrook* at 57[5].

The Government also invites the Court to construe the waiver of sovereign immunity found in the FTCA narrowly. Mot. to Dismiss, pp. 17, 18. However, the general rule that waivers of sovereign immunity should be construed narrowly does not apply to the FTCA, the Supreme Court has made clear, since Congress evinced an intent to broadly waive sovereign immunity. "Even if there were uncertainty about the reach of the term 'officer of the United States,' it would be resolved in favor of a broad scope. To begin, disputes over the breadth of the Tort Claims Act 'do[ ] not implicate the general rule that 'a waiver of the Government's sovereign immunity will

---

[5] In the eight years since *Millbrook*, Congress has been silent, suggesting acquiescence to a broad interpretation of the proviso.

be strictly construed ... in favor of the sovereign.'" *Pellegrino v. U.S. Transp. Sec. Admin.*, 937 F.3d 164, 171-72 (3rd Cir. 2019), <u>citin</u>g *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491 (2006).

C. <u>*Plaintiffs Do Not Seek Review of a TSA "Order"*</u>

The Government asserts that regardless of whether the legal basis for Count 3 was cognizable, the claim still must fail because challenges to TSA orders must be conducted in the Court of Appeals. Mot. to Dismiss, pp. 25 – 27. Defendants are correct that procedures to clear passengers "are established in the agency's Screening Checkpoint Standard Operating Procedures (SOP)," and that the SOP may be an "'order' within the meaning of [49 U.S.C.] § 46110."[6] Mot. to Dismiss, p. 28.

"Under 49 U.S.C. § 46110, the Courts of Appeals have exclusive jurisdiction over claims involving review of such orders." *Id*. Defendants are also correct in this point, but where Defendants part ways with the reality is in their framing of the complaint Plaintiff filed. Plaintiff has been quite clear that the individual defendant was sued not *for following* the SOP, but *for violating* it. Complaint, ¶ 4. While the SOP in question is a non-public document, the TSA has made public that the document does not include strip searches in its protocols. *Id*., ¶ 34. Plaintiff, therefore, does not come before the Court to ask it to "affirm, amend, modify, or set aside any part of the order." 49 U.S.C. § 46110(c). The order is not the source of Plaintiff's injury. Defendants seem to admit this when it suits them. *See, e.g.,* Mot. to Dismiss, p. 26 ("J.E.'s rights were violated

---

[6] Plaintiff concedes the same for the purposes of this motion only. There is certainly argument that the SOP is not an order but merely an internal employee handbook because it does not affect the rights and obligations of the public – but since Plaintiff does not ask the Court to review or modify the SOP, the Court need not delve into that thorny question.

by the actions of an individual TSA employee who intentionally did not follow those procedures"). Failure to train its employees as to the contents of the order, or to supervise or more carefully select its employees, is the problem, and is what Plaintiff asks the Court to fix via injunctive relief. At base, the Complaint merely asks TSA to remind its employees of how to do their job in accordance with the existing order and to supervise them to ensure that they do so. Surely the Court can do this without interfering with the SOP in any way, and Plaintiff asks no more.

Defendants' alternative argument that Plaintiff's claim for injunctive relief is "inescapably intertwined" with a § 46110 order is without merit. Mot. to Dismiss, pp. 26, 27. All case law approving the inescapable intertwinement doctrine did so to reject a collateral attack on an order. *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n. 9 (9th Cir. 2006) ("due process vagueness challenge is 'inescapably intertwined' with a review of the order because it squarely attacks the orders issued by the TSA"). None apply where the Plaintiff alleged that an order was perfectly legal but injuries stemmed from *non*-compliance with the order. In other words, because Plaintiff does not attack the order, directly or indirectly, her challenge is not inescapably intertwined with a review of the order. A ruling for Plaintiff would have no effect on the terms of the order, collaterally or otherwise.

### D. *Absent an Injunction, Plaintiff Has a Substantial Future Likelihood of Encountering TSA Abuse*

Finally, TSA argues that an injunction should not issue because Plaintiffs face no likelihood of encountering the same injury again. Mot. to Dismiss, pp. 22 – 25. Not so. The complaint makes clear that because Jamii's anatomy does not match her gender identity, she will
- 13 -

regularly fail the body scanner search commonly used by TSA. Complaint, ¶ 28. This puts her at a substantially greater risk of encountering TSA screeners who, like Defendant Doe, cannot handle dealing with the situation at hand unless TSA is forced to make changes.

*Los Angeles v. Lyons*, 461 U.S. 95 (1983), certainly placed a burden on those looking to enjoin future unconstitutional government behavior. But its holding was based on a chain of events that would be required for Mr. Lyons to encounter a repeat injury, with each link in the chain further attenuating his likelihood of a repeat. *Lyons* at 108 (would need to be stopped again, then would need to not provoke officers, then would need to be placed in stranglehold anyway, *etc*.). Here, Jamii is and always will be transgender, and any time she flies it is highly likely that the screener will push the wrong button and inadvertently cause her to fail that initial screening. There is but one link remaining in the "chain," and that is the presence of a poorly trained TSA screener, and that is the one modest change that the requested injunction seeks to impose.

## V. Conclusion

For the foregoing reasons, the government's motion to dismiss should be denied and defendants Transportation Security Administration and United States should be ordered to answer the complaint.

Respectfully submitted, this the 21st day of November, 2021.

BY: */s/Jonathan Corbett*
JONATHAN CORBETT
CA Bar No. 325608
THE LAW OFFICE OF JONATHAN CORBETT, ESQ.
958 N. Western Ave. #765
Hollywood, CA 90029
jon@corbettrights.com
310.684.3870
310.675.7080 (fax)
*Counsel for Plaintiff*

BY: */s/Matthew R. Gambale*
MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
3801 Lake Boone Trail, Suite 400
Raleigh, North Carolina 27607
matt@counselcarolina.com
919.373.6422
919.578.3733 (fax)
*Local Civil Rule 83.1(d) Counsel for Plaintiff*